J-S20015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: E.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.B., NATURAL MOTHER | No. 1590 WDA 2015 |

Appeal from the Order September 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court Division, at No(s): CP-02-AP-072-2015

| | |
|---|---|
| IN RE: T.B.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.B., NATURAL MOTHER | No. 1595 WDA 1015 |

Appeal from the Order Dated September 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court Division, at No(s): CP-02-AP-073-2015

| | |
|---|---|
| IN RE: C.S., Jr. a/k/a P.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S20015-16

APPEAL OF: D.B., NATURAL MOTHER | No. 1598 WDA 1015

Appeal from the Order September 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court Division, at No(s): CP-02-AP-0000074-2015

BEFORE:  PANELLA, J., OLSON, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 09, 2016**

In these consolidated appeals, D.B. ("Mother") appeals the orders entered on September 28, 2015, in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights to her minor daughters, T.B.C., born in July 2011, and E.B., born in October 2005, and to her minor son, C.S., Jr., a/k/a P.J., born in March 2003 ("Children"). We affirm.

The trial court summarized the relevant facts and procedural history as follows. Mother is the biological mother of T.B.C., E.B., and C.S., Jr. Mother and Children have a long history with the Allegheny County Office of Children, Youth and Families ("CYF") dating back to October 2009, when E.B. and C.S., Jr., initially came under the care of CYF. At that time, Neil Rosenblum, Ph.D., conducted an individual evaluation of Mother and interactional evaluations between Mother and E.B. and C.S., Jr., in March 2010. The trial court adjudicated E.B. and C.S., Jr., dependent on December

---

* Retired Senior Judge assigned to Superior Court.

- 2 -

18, 2009, and they were placed in foster care. E.B. and C.S., Jr., were returned to Mother's care on August 26, 2011, and the case was closed on January 4, 2012.

On April 23, 2013, E.B., C.S., Jr., and T.B.C. came into the care of CYF when Mother was incarcerated. CYF had found the house to be in deplorable condition as it was littered with trash, and the stairs were broken, creating a safety hazard. The whereabouts of the Children's fathers was unknown, and safety concerns with the home caused Children to be removed by an Emergency Custody Order. Children were placed in foster care, and have remained there.

On May 8, 2013, the trial court found Children to be dependent and ordered them to remain with their foster care placements. In addition, the trial court ordered Mother to have a mental health evaluation and to follow all recommendations. The trial court also ordered Mother to have monthly contact visits while she was incarcerated, and to have liberal, supervised visits at CYF's office upon her release from jail.

The first permanency review hearing was held on August 30, 2013. The trial court found that Mother had achieved moderate compliance with her permanency plan. Mother was ordered to continue with all of her Family Service Plan ("FSP") Goals, including obtaining appropriate housing, complying with random drug screens, signing releases to permit CYF to obtain Mother's mental health records, and to comply with judicial-related

services provided through the Allegheny County Jail. Mother was granted supervised visits of Children at the CYF offices.

On December 4, 2013, the trial court found that Mother had minimal compliance and progress with her FSP goals. Mother failed to attend the hearing due to her incarceration. The trial court found that Mother continued to be uncooperative with CYF, had not been consistent with her mental health and drug and alcohol treatment, and had failed to secure permanent housing. CYS also reported that Mother continued to display explosive behaviors toward CYF workers and Children during supervised visits. The court also ordered Mother and Children to have updated interaction in evaluations with Patricia Pepe, Ph.D., licensed psychologist. Mother was ordered to follow her FSP goals and to sign releases for services including mental health and drug and alcohol treatment. The trial court ordered CYF supervised visits to continue but could occur at neutral locations.

Mother was once again not present at the March 14, 2014 permanency review hearing due to her incarceration. The trial court found and ordered that all matters were to remain status quo, but ordered CYF to schedule a permanency planning meeting to discuss a goal change. The court also scheduled a permanency review hearing for March 21, 2014, to afford Mother the opportunity to testify via phone from jail.

At the March 21, 2014 permanency review hearing, Mother participated by phone. The trial court reaffirmed its findings from the March

14, 2014 hearing and ordered CYF to schedule interactional evaluations. The court also ordered Mother to have contact visits with Children at the jail.

On July 18, 2014, the trial court found that Mother was making minimal progress toward the goal of reunification with Children. Mother was at the Renewal Center, and Children remained in foster care.

On December 5, 2014, CYF presented an emergency motion to continue the scheduled termination proceedings. The trial court granted CYF's motion to continue the termination hearing, but proceeded to hear the scheduled goal change and the permanency review hearing. The court found that Mother had continued to make only minimal progress on her FSP goals, which included that she obtain stable housing and continue mental health treatment. The court noted that Mother had 15 appointments scheduled for a mental health evaluation, and had failed to attend or call in advance to cancel the appointments. The trial court also ordered that the goal be changed to adoption since Children had been out of Mother's care for 19 out of the past 22 months.

On March 4, 2015, the court again found that Mother had not complied with her FSP goals and had made no progress to reunify with Children. Mother again failed to attend the hearing or participate by phone. Despite Mother's failure to attend court or visit Children, CYF was ordered to provide Mother with transportation to any necessary appointments and to contact Mother to set up a visitation schedule with Children.

On April 9, 2015, CYF filed petitions to terminate the parental rights of Mother. On April 10, 2015, the trial court found that Mother continued to have minimal compliance and progress with her FSP goals. The court ordered Mother to comply with her FSP goals. Mother continued to not visit with Children.

At the permanency hearing on August 12, 2015, the trial court found that Mother continued to be minimally compliant with her permanency plan. Mother also failed to provide CYF with documentation to verify that she is currently in mental health treatment or that she has her own housing. The court ordered that Children's visits with Mother be reduced to just once a month. Mother was not visiting Children.

CYF moved to terminate Mother's parental rights. Following the termination hearings of September 2, 2015, and September 16, 2015, the trial court granted CYF's petitions for involuntary termination of Mother's rights on September 28, 2015, as the trial court found that CYF had met its burden of proof by clear and convincing evidence that grounds for termination of Mother's parental rights existed under 23 Pa.C.S.A. § 2511(a)(2), (5), and (8), and that the termination of Mother's rights met the needs and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b).

These timely appeals followed. This Court consolidated the appeals *sua sponte*. Mother raises one issue on appeal: "Did the trial court abuse its discretion and/or err as a matter of law in concluding that the termination of

Natural Mother's parental rights would best serve the needs and welfare of the child of [Children] pursuant to 23 Pa. C.S.A. § 2511(b)?" Mother's Brief at 4.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***See In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). On appeal, Mother does not present any argument with respect to Section 2511(a). Thus, any challenge to Section 2511(a) is waived, and we need only consider whether the court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011). Section 2511(b) provides as follows.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

> The requisite analysis requires us to focus
>
> on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no

- 8 -

evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations and internal quotation marks omitted).

Here, the trial court concluded that the termination of Mother's parental rights would be in Children's best interest. We agree.

The court had always recognized that a bond existed between Mother and Children. Children were bonded to Mother and are comfortable with her. However, after a review of the record and the evidence presented at the hearing, trial court concluded that the termination of Mother's parental rights would be in Children's best interest.

"[T]he mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents" *Id*. at 268 (citation omitted). In weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of Childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

- 9 -

In this case, Mother quit cooperating with everyone involved with Children, blamed "the system," and refused to visit Children. The trial court found that nothing close to a true mother-child relationship exists, and has not existed for over a year because of Mother's unwillingness to visit Children and continue any beneficial relationship she may have had with Children. The court also found that Mother quit attending court hearings for almost a year prior to the termination hearing. The trial court noted that Mother's choice not to visit Children made it obvious that she placed her own distorted worldview or behavioral needs ahead of the best interests and welfare of Children.

In addition, the trial court found that Mother has a long history of untreated mental health problems. Evidence showed that Mother experienced severe mental problems, which significantly interfere with her ability to function in society or parent Children. Dr. Neil Rosenblum opined that "Mother's anti-social behavior, her extreme messages of detachment from society, or people of various racial and cultural backgrounds, has been self-defeating and detrimental to the well-being of her children." N.T., Termination Hearing, 9/2/15, at 35.

The trial court also found that Mother was unable to provide Children with a stable and secure home for the past 28 months. Mother had nine different mailing addresses since May 2013, which did not include that time that Mother was incarcerated. The record shows that Mother continued to

commit criminal acts that resulted in her being incarcerated for 11 out of the 28 months that Children have been in foster care. Thus, the trial court found that Mother's inability to keep from being incarcerated negatively impacted the developmental, physical and emotional needs, and welfare of Children.

The trial court also considered Children's current pre-adoptive placement by CYF as a positive factor in its finding that the termination of Mother's parental rights is in the best interest of Children and would meet their developmental, physical and emotional needs and welfare. E.B. and T.B.C. are in a treatment foster home and have resided with their foster mother, K.W., for a period of two years. The trial court found E.B.'s and T.B.C's placement to be in a safe and secure pre-adoptive home. In addition, C.S., Jr., was also placed in a safe and secure pre-adoptive foster home.

Mother has done little to remedy the conditions that led to the removal of the Children. The foster families provide stable homes and security for the Children. Thus, the trial court found ample clear and convincing evidence to affirm the decision of the trial court terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2016